## William H. Pusheck v. Frances E. Willard N. T. H. Association.

1. EVIDENCE—*Unexecuted Lease Admissible as a Part of the Res Gestæ.*—In an action for rent by a lessor against a lessee holding over, a lease prepared during negotiations between the parties for a new letting of the premises, but not executed, is admissible in evidence upon the question of the amount of the rent as a part of the *res gestæ.*

2. PRACTICE—*Where a Case Should be Submitted to the Jury.*— When the evidence presents the question as to whether a tenancy was created for a year or from month to month, it should be submitted to the jury.

3. ESTOPPEL—*Acceptance of Checks—Landlord and Tenant.*—The fact that a tenant, holding over, paid his rent monthly by checks, stating on their face that they were for the rent in full for the respective months during which the payment was made, does not estop the lessor from denying that an offer of the lessee pending a negotiation for a new lease was accepted.

4. LANDLORD AND TENANT—*Effect of Acceptance of Less Rent Than the Amount Due.*—An acceptance by a landlord of a sum less than the amount of rent due, in satisfaction, is, in law, a discharge only of that much of the rent, and an agreement to take a less sum in such satisfaction is void for want of a consideration.

Action for Rent.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed March 25, 1901.

J. N. Swars, attorney for appellant.

Walker & Payne, attorneys for appellee; David T. Campbell, of counsel.

Mr. Justice Windes delivered the opinion of the court.

Appellant sued appellee for a balance for the months of May to December, 1899, both months inclusive, of the rent claimed to be due on certain premises known as 1619 Diversey avenue, Chicago. The suit was first tried before a justice, who gave judgment against appellant, and he appealed to the Superior Court, where a trial before the court and a jury resulted in a verdict for the defendant, directed by the court, and a judgment thereon, from which this appeal is taken.

The errors complained of are in the exclusion of evidence and in not submitting the cause to the jury.

It appears from the evidence that appellee had been a tenant of appellant for some five years prior to May 1, 1899, of the premises for the rent of which recovery is sought in this case; that the rent from May 1, 1898, to May 1, 1899, was $150 per month, and that it was paid to Harry Black, agent of the plaintiff. Appellee's tenancy of the premises expired one year from May 1, 1898, though what the length of the term was does not clearly appear—only that appellee had been in the possession thereof five or six years, and had paid rent at the rate of $150 per month for the year ending May 1, 1899. Some time in April, 1899, just what time does not appear from the evidence, said Black had a communication by telephone from a representative of appellee, to the effect that he was authorized to offer a rental of $125 per month for these premises for the ensuing year, commencing with the first of May following, to which he replied that he had nothing to do with making the rates; that Dr. Pusheck, who was appellant's agent and was away in California, had reported to him, Black, that he, Pusheck, had informed appellee that the "lowest rental would be $150 per month, and that under no circumstances would he make it any less, if they remained there." The represent-

ative then asked Black if he could not communicate with the doctor concerning the offer, to which he replied that he would, and being asked how long he thought it would be before a reply could be returned, he answered that he could not tell; that he, Black, was then asked if he, the doctor, could not telegraph a reply, to which Black replied, "I could not tell anything about that." Black was then asked to report the offer of $125 per month to the doctor, which he did by letter, and the doctor replied to Black " to send up the leases at $150; that he told them before he went away that was the lowest terms." Black then, on April 28, 1899, sent by mail to the appellee a form of lease of that date from appellant to appellee of the premises in question, for a term from May 1, 1899, to April 30, 1900, at a rental of $1,800 per year, payable in monthly installments of $150 each in advance, upon the first day of each and every month of said term, and containing the usual covenants of a lease in the city of Chicago. This lease was returned to Black on the 7th of August following, with the information that appellee would not pay more than $125.

Appellee remained in possession of the premises up to the time of the trial in the Superior Court, which was April 9, 1900, and for the months of May to December, 1899, both months inclusive, paid to Black $125 each month, commencing about May 20, 1899, for the rent, by checks made payable to the order of Dr. Charles Pusheck, on the face of each of which it was stated that it was for " rent in full " for the respective months during which payment was made. For each check when received by Black he gave a receipt, stating that he received the amount of $125 on account of rent, which was $150, leaving a balance due of $25 on that month's rent. Besides the matters aforesaid, no other notification was sent to appellee as to the renting of said premises for the term in question, and the foregoing is in substance all the evidence which was before the court and jury.

Said form of lease, which was not signed by appellant nor by appellee, was offered in evidence, but on objection

was excluded by the court. This, we think, was error. It was sent by mail to appellee April 25, 1899, in response to its offer made to Black, and was returned to Black, the representative of appellant, the 7th of the following August, with the information that appellee would not pay more than $125 rent. This instrument was, then, a part of the *res gestœ;* that is, it constituted a part of and was connected with the communications between the representatives of appellant and appellee regarding the leasing of the premises, and should have been submitted to the jury under proper instructions, leaving to the jury for determination the question as to whether, under the circumstances shown, it was acted upon and accepted by appellee, and became a contract. Clinton Wire Cloth Co. v. Gardner, 99 Ill. 151; 1 Jones on Evid., Sec. 271, and cases cited under note 2; Prickett v. Madison Co., 14 Ill. App. 454–60; Reynolds v. Sumner, 126 Ill. 58–67; Monroe v. Snow, 131 Ill. 126–32; Lusk v. Throop, 189 Ill. 127–42.

We do not think the contention of appellant, that the form of lease could be said to have been sufficiently signed by appellant and received and adopted by appellee, so that it became, because of such signing, a contract between them, is tenable. It does not appear that Black, who drafted the lease and sent it to appellee, was authorized to make a lease or to sign this one for appellant, and for this reason we think there was no such signing of the instrument for appellant as would make it his contract. The authorities cited as to the sufficiency of the signing are not applicable to the facts in this case.

We also think that the evidence presents the question as to whether a tenancy was created for one year from May 1, 1899, to April 30, 1900, or from month to month, at a rental of $150 per month, and that it should have been submitted to the jury on this point. Gardner case, *supra;* Goldsborough v. Gable, 152 Ill. 594–8; Clapp v. Noble, 84 Ill. 64; Keegan v. Kinnare, 123 Ill. 281–8; Webster v. Nichols, 104 Ill. 161–73; Goldsborough v. Gable, 140 Ill. 269–73; Condon v. Brockway, 157 Ill. 90–4.

In the Gardner case, *supra*, which was very fully and carefully considered, and where negotiations for a different lease were pending up to the time of the expiration of the old lease, and the tenant held over without making any new lease, an instruction was approved by the Supreme Court, which, in effect, told the jury that where a tenant occupies premises under a lease for a year or years and holds over after the expiration of such lease without having made any new agreement with the landlord under which such holding over takes place, that then the tenant may, at the election of the landlord, be treated as tenant for another year upon the terms of the original lease. The court in this connection quotes, with approval, the following language from Taylor on Landlord and Tenant : " His (the tenant's) mere continuance in possession fixes him as tenant for another year, if the landlord thinks proper to insist upon it." The court also says, in effect, that the legal presumption arising from the tenant's holding over, may be rebutted, and approved an instruction in the case which submitted to the jury whether, under the facts before it, that presumption of law was overcome.

In the Clapp case, *supra*, it was held that the landlord could hold the tenant under the terms of the old lease, even where he held over in defiance of the landlord and after a notice to quit.

In the Keegan case, *supra*, where the tenant held over without a new arrangement, the court say the landlord, at his election, might treat him as a trespasser, or as a tenant for another year, upon the same terms as in the original lease, and that the tenant had no right of election, but that the landlord alone could elect.

To the same effect are the other cases cited, and there is no exception to the rule that if the tenant remains in possession, after the expiration of his old lease, without a new agreement, it is optional with the landlord whether he will treat him as a trespasser or upon the terms of the old lease.

Applying these cases to the evidence here, the most that can be claimed by appellee is that there was a new agree-

ment. If there was none, then appellant could hold appellee on the terms of the old lease, which was, at least, a tenancy from month to month, if not for one year, at $150 per month. Whether there was a holding over or a new tenancy was a question for the jury.

In so far as any cases cited by appellee may be said to conflict with those above cited, the latter, being the later expressions of the Supreme Court, must prevail.

The contention of appellee, that the acceptance by appellant of the checks, which stated on their face that they were for "rent in full" for the respective months during which the payment was made, estops him from denying that appellee's offer of $125 per month was not accepted, that no lease existed between the parties, and that, consequently, appellee was liable only for use and occupation, is not, in our opinion, tenable. We think that what took place, as hereinabove stated, at least tends to rebut any presumption that appellant accepted the $125 as in full for rent of the premises. Each time when a payment was made, it was stated in the receipt that the rent was $150, that the $125 was taken on account, and that there remained a balance due upon each month of $25. This was consistent with the communication to appellee by Black in April, that the rent would, under no circumstances, be less than $150 per month, and appellee, by remaining in the premises after the end of the old lease, did so without any understanding that the rent should be less than $150. This was, in our opinion, a settled matter before any payment was made. On appellee's own contention, it was liable to pay $125, and the payment of that amount under these circumstances could not have the effect of a compromise between it and appellant. At least the notification by appellant to appellee that the rent for the coming year would be $150, and the sending of the form of lease fixing the rent at that amount, tended strongly to show a liquidation or agreement by appellee, in case it retained the premises, to pay the amount claimed by appellant, and if it was so liquidated, which we think the evidence establishes, then the payment

of a less sum would not have the effect of releasing or dis-
charging appellee for the balance of $25 per month.
Hayes v. Life Ins. Co., 125 Ill. 626–38; Ostrander v. Scott,
161 Ill. 339–45; Jennings v. Neville, 180 Ill. 270–9; Lapp v.
Smith, 183 Ill. 179–84; Martin v. White, 40 Ill. App. 281–8;
Rumsey & Co. v. Barber & Colman, 78 Ill. App. 88–92.

In the Hayes case, *supra*, the court say:

" The rule is well settled that an acceptance by the cred-
itor of a sum less than the amount due in satisfaction, or
an agreement to take a less sum in satisfaction, is, in the
first case, a discharge of only so much of the debt, and in
the other case the promise is void, as without considera-
tion."

In the Ostrander case, *supra*, the court say:

" The authorities are numerous and uniform that a pay-
ment of a part of a fixed and certain demand, which is due
and not in dispute, is no satisfaction of the whole debt, even
where the creditor agrees to receive a part for the whole
and gives a receipt for the whole demand."

The court also, it is true, held that this doctrine did not
apply as to an unliquidated demand.

To the same effect is the Jennings case, *supra*, which
cites and approves of the above rule, and the case of Lapp
v. Smith, *supra*, though, as in the Ostrander case, it was
held that the doctrine did not apply there because the pay-
ment of the less amount was tendered on condition that it
should be accepted in satisfaction of an unliquidated dis-
puted claim. Appellee, having notice as to what the rent
would be if it remained beyond the term of the lease, and
having retained the premises, the amount of rent became
liquidated at $150 per month.

The claim of appellee that the form of lease was not
received by it, and that there is no evidence that appellee
ever did anything to signify its acceptance of the lease, is
not sustained by the record. The evidence shows that the
form of lease was sent by mail on April 28, 1899, to the
ladies of the National Temperance Hospital. The occur-
rence was in Chicago, and common experience is that mail
matter mailed in Chicago is delivered on the same day it is

mailed, or at least on the day following. That the form of lease was received by appellee is shown by the fact that it was returned by some representative of appellee to appellant's agent on the 7th of August following, and there is no claim made that it was not received in time for appellee to have taken action before May 1, 1899. We, however, regard this as unimportant, as, if the form of lease was not received nor acted upon by appellee, there could have been no new agreement before the expiration of the old one, and it only remained for appellant to exercise his election to hold appellee on the terms of the old lease.

The judgment is reversed and the cause remanded.