Charles P. Hennecke, Appellee, v. Harold Warp and Flex-O-Glass, Inc., Appellants.

Gen. No. 45,643.

Opinion filed June 30, 1952. Released for publication July 15, 1952.

CHRISTIANSON & SCARRY, of Chicago, for appellants.

HINSHAW and CULBERTSON, of Chicago, for appellees; OSWELL G. TREADWAY, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendants appeal from a decree of the superior court of Cook county directing an accounting for commissions allegedly due plaintiff under a contract of employment as a salesman. The cause was referred to a master, who found that a contract of employment was entered into with defendant, to pay 1% commission upon sales (certain territory excepted), but that an accord and satisfaction existed between the parties, and therefore plaintiff could not recover, and recommended that the complaint be dismissed for want of equity.

Upon exceptions filed to the master's report and heard by the chancellor, the court entered a decree confirming in part the master's report as to the existence of the contract of employment and the obligation to

pay a commission of 1%, but reversing the master as to the finding of an accord and satisfaction.

The contract of employment was originally made with defendant Warp, whose business was subsequently incorporated as Flex-O-Glass, and for the purpose of the hearing it was stipulated that the defendants could be considered as one in determining the liability. The evidence discloses that in the computation of the amount due plaintiff for commissions, the sales occurring in the territory west of the Rockies and the sales to Gamble and Apfel were to be excluded. Whether the acceptance by plaintiff of the final check and the circumstances under which it was accepted constitutes accord and satisfaction, defendant contends, depends upon whether defendant's employees, Delbert L. Christensen, defendant's office manager, and George Feldman, assistant secretary, had either express or implied authority to bind defendant with plaintiff's claim of conditional delivery and acceptance of said check.

The findings in the instant decree are:

"A. An agreement was made between plaintiff and Warp in February, 1941 whereby plaintiff's remuneration was fixed at a guarantee of $1500 per annum plus 1% of the gross sales over $250,000, excluding Gamble and Coast to Coast account and all business West of the Rockies.

"B. The Emergency Control Act of 1942 (Salary Stabilization) did not apply to plaintiff's compensation.

"C. Plaintiff relied on false representations of Warp as to the effect of salary stabilization in accepting and cashing checks during its existence.

"D. Plaintiff never talked to Warp about the check of July 23, 1947.

"E. The Apfel Account should be excluded in computing plaintiff's compensation.

"F. Feldman had implied or express authority to waive any limitation on the check of July 23, 1947 and Feldman and Christensen were proper persons to notify as to objections to the check and the corporation received proper notice through said persons."

The decree ordered and directed:

"1. Hennecke is entitled to, and shall have, an accounting from defendants, Harold Warp and Flex-O-Glass, Inc. and shall recover $1500 per year plus 1% of all sales in excess of $250,000 per year for each year of employment commencing January 1, 1941 and ending May 31, 1947, excluding from gross sales $250,-000 plus, Gambles, Coast to Coast, Apfel and accounts West of the Rockies, defendants to be entitled to credit, against sums found due plaintiff, for all compensation heretofore paid.

"2. Accounting shall be based on contract as found and compensation shall not be limited by Emergency Control Act of 1942."

The evidence shows that plaintiff terminated his employment at the end of May, 1947. On July 23, 1947, plaintiff received a check for $3,146.56 containing the notation, "The amount shown hereon constitutes full settlement of all monies due, to and including date of termination of employment." It is this check, with the endorsement, which defendant contends constitutes accord and satisfaction and bars the right to recovery. The evidence is that during the years 1942 to and including the first half of 1945, plaintiff was given checks with statements showing the computation, which were in addition to the $1500 a year drawn by him. These checks represented 1% of the sales. Defendant contends these checks for additional compensation were mere bonus payments and not due to any contract for commissions.

428

The dispute in the evidence centers around the claim of defendant that these payments were bonus payments; that they were not on account of any obligation or duty owing to plaintiff; and that the delivery and acceptance of the final check on July 23, 1947, with the endorsement already noted, were in full satisfaction of any indebtedness due plaintiff.

Plaintiff testified, and there is corroboration of his testimony, that he took this check to Christensen, defendant's office manager, and complained that he could not accept the check because it did not represent the correct amount; that Christensen thereupon took him to Feldman, defendant's assistant secretary, who prepared the check and the notation thereon, and plaintiff repeated to Feldman his objection to the check, whereupon Feldman told him "it was perfectly all right to accept it, that if there were any changes or corrections or errors they would be in order." Plaintiff testified he advised Feldman that upon such understanding he would accept the check.

Feldman having authority to prepare the check and the endorsement referred to, it could hardly be questioned that he had implied authority to deliver the check, explain the endorsement thereon and agree that if the amount of the check were found not to be correct, it would be corrected and the change made, and that it would be perfectly all right for the plaintiff to accept the check. Especially must this be so when Christensen, the office manager, was confronted by plaintiff with the complaint as to the correctness of the amount of the check and took plaintiff to Feldman for a better understanding as to the check.

We are impressed, as the chancellor was, that plaintiff's version of the delivery and acceptance of this check is borne out by the evidence in the record, and that under such circumstances the acceptance of

the check does not constitute an accord and satisfaction.

In *Alder v. Consumers Co.,* 152 F. (2d) 696, 699, the court said:

"One of the essentials of an accord and satisfaction is an assent or meeting of the minds of the parties."

The claim of plaintiff was a liquidated one, merely requiring computation. We think the evidence sufficiently demonstrates a contract for employment calling for 1% commission. It is more than mere coincidence that the checks given to plaintiff through the years, mentioned as additional compensation, were computed on the basis of 1% of the sales. We think this is a strong circumstance corroborating plaintiff's version. There was no such bona fide dispute existing at the time of the acceptance by plaintiff of the final check that would constitute an accord and satisfaction. Moreover, as pointed out, the check was delivered and accepted upon condition that if there were any changes, corrections or errors, they would be in order and could be made.

In *Obermeyer v. Wisconsin Dairy Farms Co.,* 199 Ill. App. 568, 570, the court said:

"It has been held many times that to constitute an accord and satisfaction there must be an honest dispute between the parties, a tender with the explicit understanding of both parties that it was in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment. *Farmers and Mechanics Life Ass'n* v. *Caine,* 224 Ill. 606; *Snow* v. *Griesheimer,* 220 Ill. 109; *Western Union R. Co.* v. *Smith,* 75 Ill. 496. . . .

" . . . The language, 'trust that the settlement is in accordance with your figures,' would indicate that plaintiff was at liberty to modify or disagree with the

statement if from his own records he was of the opinion that it was not correct."

In *Shirk v. The County Board of Massac County*, 216 Ill. App. 554, the court said:

"The demands by the appellee were not unliquidated. It was only a matter of computation to determine the total amount due with each report. . . .

"Under these authorities it appears the demands of the appellee were not for unliquidated damages and that the acceptance of a less sum than the amount actually due only satisfied a portion of each demand equal to the amount received."

In *Teague v. John E. Burns Lumber Co.*, 187 Ill. App. 225, 228, the court stated:

"Although we do not find in the decisions in our own State any directly in point, we think, in reason, that the existence of *bona fides* in the dispute on the part of the debtor in such cases is a question of fact, and as such belongs to the jury to decide. It cannot be that a debtor shows such good faith merely by asserting it. Every dishonest and reluctant debtor might thus harass his creditors by saying: 'Take part or nothing except at the end of a law suit.'"

We think the instant decree was justified, and it is affirmed.

*Affirmed.*

KILEY, P. J. and LEWE, J., concur.